[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Wendy J. Spada appeals pursuant to C.G.S. 31-249b the employment security board of review s (board) decision denying her claim for unemployment compensation benefits.
The procedural history of this claim may be summarized as follows. Mrs. Spada worked for The TJX Companies, Inc. from November of 1999 to October of 2000. The Plaintiff gave notice of her intent to leave her job on October 4th and her last day of work was October 4, 2000. After filing an unemployment compensation claim in early November of 2000, the Administrator granted Plaintiff unemployment benefits by a decision issued pursuant to C.G.S. 31-241 on November 22, 2000. The employer, TJX Companies, appealed the award of benefits, claiming that Mrs. Spada voluntarily left suitable work without good cause attributable to the employer. An appeals referee conducted a hearing on the appeal and on February 28, 2001 issued a decision, including findings of fact and conclusions of law, reversing the award of benefits.
Mrs. Spada appealed the reversal of benefits to the employment security board of review. On March 30, 2001 the board denied Mrs. Spada's claim for benefits. It is from this decision that Mrs. Spada appeals to the superior court.
The issue presented is whether the board's determination is factually and legally reasonable under the circumstances. In rejecting her claim for benefits the board determined that Mrs. Spada "left suitable work voluntarily and without good cause attributable to the employer," C.G.S.31-236 (a)(2)(A), which disqualifies her from receiving unemployment compensation.
The Appeals Referee assessed the credibility of the witnesses and the evidence and made findings of fact that were adopted and relied upon by the board. Essentially they document the employment relationship that started on November 9, 1999 when Ms. Spada accepted employment as a full CT Page 12078 time merchandise lead. At the time she was first employed Spada was told she would be considered for a management training program within the organization. The claimant stated she left her job in October of 2000 because she felt that the employer did not plan to promote her.
When Ms. Spada was hired, the employer told her she would be considered for its management training program. Several weeks prior to the claimant's resignation she told Ms. Murray, the store manager, that she was dissatisfied because she was not being trained as a manager. At that time, Ms. Murray discussed the claimant's tardiness and attendance issues with her. Ms. Murray did not tell the claimant that she would never be considered for management training. However, Ms. Murray was not considering her at that time.
The claimant ultimately resigned because she decided, based on comments that the manager had made regarding her performance, that the employer did not plan to place her in the management training program. The claimant conceded in her appeal to the board, however, that the employer merely promised that she was a potential candidate for management training. The record also establishes that the employer did not select the claimant for the program because it was not entirely satisfied with her performance. As a result, the claimant has not substantiated that the employer breached the employment contract with regard to a promotion.
The claimant's testimony did not indicate a change in hours was actually the reason that she resigned either. To whatever extent it did enter into her decision, the record does not support the claimant's contention that the employer arbitrarily changed her hours. In fact, the claimant admits that the employer tried to accommodate her inability to work nights or weekends during the summer so that she could work at another job. Finally, it appears that the employer scheduled the claimant to work on Saturday during the last few weeks of her employment because it felt that she wanted these additional hours due to the time she was taking off on Thursdays. Therefore, this schedule conflict apparently resulted from a misunderstanding rather than an attempt on the employer's part to create a problem for the claimant. In any event, the claimant would have only had a conflict with working on Saturday for two additional weeks after she resigned, since her second job was ending at that time.
The claimant failed to demonstrate that the employer breached the contract of hire relative to her work hours or that the employer substantially changed the work hours by requiring the claimant to work certain Saturdays as the claimant indicated on her job application that she could work weekends. The employer granted the claimant a temporary CT Page 12079 reprieve from Saturday work hours based upon the claimant's representation that she wished to work for her mother until the student employees at her mother's restaurant finished school. The employer did not promise to refrain from scheduling the claimant on weekends permanently or for a definite period. Moreover, working on Saturdays would only present a conflict for the claimant on one or two additional Saturday at the time she left the job. She had already worked four Saturdays as requested by the employer.
Scope of Review
"[A]ppeals from the board to the Superior Court are specifically exempted from governance by General Statutes §§ 4-166 et seq., the Uniform Administrative Procedure Act. All appeals from the board to the Court are controlled by §§ 31-249b." Calnan v. AdministratorUnemployment Compensation Act, 43 Conn. App. 779, 783, 686 A.2d 134
(1996). Judicial review of any decision shall be allowed only after an aggrieved party has exhausted his or her remedies before the board. General Statutes §§ 31-248 (c) and 31-249a (c). Appeals within the unemployment compensation system must be taken in a timely fashion or they are to be dismissed. Gumbs v. Administrator, 9 Conn. App. 131, 133,517 A.2d 257 (1986).
"To the extent that an administrative appeal, pursuant to General Statutes §§ 31-249b, concerns findings of fact, a court is limited to a review of the record certified and filed by the board of review." (Internal quotation marks omitted.) Mattatuck Museum-Mattatuck HistoricalSociety v. Administration, 238 Conn. 273, 276, 679 A.2d 347 (1996). See also Practice Book §§ 22-9 (formerly §§ 519). "The court must not retry the facts nor hear evidence." (Internal quotation marks omitted.)Mattatuck Museum-Mattatuck Historical Society, supra, 238 Conn. 276. See also United Parcel Service, Inc. v. Administrator, 209 Conn. 381, 385,551 A.2d 724 (1988); Burnham v. Administrator, 184 Conn. 317, 321,439 A.2d 1008 (1981)." If, however, the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts." (Internal quotation marks omitted.) Mattatuck Museum-MattatuckHistorical Society, supra, 238 Conn. 276. "Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion." (Internal quotation marks omitted.) Church Homes, Inc. v. Administrator,Unemployment Compensation Act, 250 Conn. 297, 303-04, 735 A.2d 805
(1999). CT Page 12080
"As a general rule, [t]he application of statutory criteria to determine a claimant's eligibility for unemployment compensation under General Statutes §§ §§ 31-235 and 31-236 involves mixed questions of fact and law in which the expertise of the administrative agency is highly relevant." (Internal quotation marks omitted.) United ParcelService, Inc. v. Administrator, supra, 209 Conn. 386. Questions involving matters of statutory construction are questions of law on which the agency s view is entitled to deference but is not dispositive. SeeDaSilva v. Administrator, 175 Conn. 562, 564, 402 A.2d 755 (1978). See also Bridgeport Metal Goods Mfg. Co. v. Administrator, 2 Conn. App. 1,3, 479 A.2d 329 (1984).
Analysis
Significantly, Mrs. Spada did not file a motion to correct the record before the administrator nor did she filed a motion to add evidence to the record pursuant to the provisions of 22-5 of the Practice Book. The statutory appeals mechanism that the appellant invokes on her behalf specifically restricts the manner by which findings of the board can be challenged "(f)indings of the board shall be subject to correction only to the extent provided by section 519 of the Practice Book." Section 519 of the Practice Book, now renumbered 22-5 specifies that the trial court cannot review the conclusions of the board when these depend upon the weight of the evidence and the credibility of witnesses. . . ." See alsoCalnan v. Adminstrator 43 Conn. App. 779, 783-84 (1996). For the purposes of this appeal the court must accept the unchallenged administrative findings of facts. These facts include that the claimant quit her job because she felt that the employer did not plan to promote her. Additionally, the claimant was not able to demonstrate that the employer breached the contract of hire relative to her work hours or that the employer substantially changed the work hours. Based upon these findings there is adequate support in the record to support the conclusion that Mrs. Spada left her employment voluntarily and without good cause attributable to the employer.
The appeal is dismissed.
Emmet L. Cosgrove, J. CT Page 12081